# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| THOMAS O. FADELL[1], | } |
| Plaintiff, | } |
| v. | } Case No.: 3:09-CV-0951-RDP |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | } |
| Defendant. | } |

## MEMORANDUM OF DECISION

Plaintiff Thomas O. Fadell brings this action pursuant to Section 405 of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Social Security Disability Insurance benefits. Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I. Proceedings Below

This action arises from Plaintiff's application for a period of disability and disability insurance benefits filed protectively on May 4, 2007 alleging disability beginning March 2, 2003. (Tr. 74). Plaintiff's claim was denied on June 20, 2007. (Tr. 58). Plaintiff subsequently requested and received a hearing before Administrative Law Judge J. Edward Tease on September 18, 2008 in Florence, Alabama. (Tr. 10, 63, 64). In his decision dated October 15,

---

[1] Plaintiff's name appears as "Thomas O. Fadell" in the records; however, the case was filed under "Thomas G. Fadell." This appears to be a typographical error.

2008, the administrative law judge ("ALJ") determined that Plaintiff was not eligible for disability benefits since he had not been under a disability within the meaning of the Social Security Act ("Act") from March 2, 2003 to September 30, 2006. (Tr. 10-12). On March 1, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4), making that decision the final decision of the Commissioner, and therefore, a proper subject of this court's review.

At the time of the hearing in question, Plaintiff was forty nine years old, weighed 340 pounds, had received a GED, and completed three years of college. (Tr. 14, 31, 105, 145). Plaintiff had previously worked as a truck driver, a machine operator, and a teaching assistant. (Tr. 86, 112, 155-59). Plaintiff claims disability as of March 2, 2003 due to a combination of high blood pressure, heart conditions, asthma, obesity, and diabetes. (Tr. 100). Medical records from July 20, 1998 to August 8, 2006 show that Plaintiff suffers from coronary atherosclerotic heart disease, sick sinus syndrome, labile hypertension, a remote history of peptic ulcer disease, hiatal hernia, a history of iron deficiency anemia and occult gastrointestinal bleed, obesity, and sleep apnea. (Tr. 14, 178, 191, 228, 224-25, 247, 302, 954). Plaintiff required percutaneous transluminal coronary angioplasty and stenting of the circumflex coronary artery in October 1997, and subsequent angioplasty and stenting of the lower anterior descending coronary artery in February 1998. Tr. 191). On January 28, 1998, Plaintiff received a permanent pacemaker implant. (Tr. 267, 1088). Between 1998 and 2005, Plaintiff was admitted to Eliza Coffee Memorial Hospital for heart-related problems no less than thirty times, including seventeen trips to the emergency room for chest pain. (Tr. 204, 212, 224, 246, 265, 283, 301, 331, 354, 373, 399, 416, 434, 466, 592, 604, 666, 679, 688, 704, 736, 754, 793, 865, 879, 893, 909, 928, 942,

954).  Plaintiff's medications include Zocor, Spironolactone, Imdur, Furosemide, Atenolol, Prilosec, nitroglycerin, Albuterol, niacin, Feosol, Covera HS, Trimaterine, vitamin E, vitamin B12, vitamin C, K-Dur, Lasix, Pepsid, ferrous sulfate, aspirin, and Zoloft. (Tr. 14, 954, 969).

## II. ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1 *et. seq*. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the claimant engages in gainful work activity, then the claimant cannot claim disability.  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. Absent such impairment, the claimant may not claim disability.  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). If such criteria are met, the claimant is declared disabled.

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  If the claimant is determined to be capable of performing past relevant work, then he is deemed not

disabled. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(g), 404.1560(c).

In the instant case, the ALJ determined that: (1) Plaintiff did not engage in substantial gainful activity during the time of the alleged disability; (2) Plaintiff does have medically determinable impairments that more than minimally affect his ability to perform work-related activities; (3) Plaintiff is unable to perform any past relevant work (Tr. 12, 13, 17); but (4) Plaintiff does not have and impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1.

After consideration of all the medical evidence, the ALJ found that Plaintiff retains the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a). (Tr. 13). Although the ALJ found that Plaintiff is unable to perform his past relevant work, he concluded that there are nonetheless a significant number of sedentary jobs in the national economy that Plaintiff could perform. (Tr. 17). The ALJ therefore concluded that Plaintiff is not disabled as defined by the Act and thus was not entitled to a period of disability insurance benefits. (Tr. 18). It is the ALJ's determination of RFC and his determination of the existence of work in the national economy compatible with Plaintiff's RFC, age, education, and work experience that Plaintiff challenges here.

### III. Plaintiff's Argument for Remand or Reversal

Plaintiff requests that this court remand this case in accordance with the fourth sentence of 42 U.S.C. § 405(g) based upon three arguments. (Pl.'s Mem. 1, 10). First, Plaintiff asserts that the Commissioner erred by making a RFC assessment that is not supported by substantial evidence. In particular, Plaintiff argues that the ALJ exceeded his role by making a medical determination that is reserved to a State agency medical or psychological consultant and by making a determination that is unsupported by evidence in the record. (Pl.'s Mem. 4). Second, Plaintiff argues that the ALJ failed to sustain his burden of proof in establishing the availability of jobs in the national economy suitable for Plaintiff's activity level because the ALJ did not obtain testimony from a vocational expert. Finally, Plaintiff claims that the ALJ failed to take Plaintiff's obesity and its effects on his medical impairments into account.

### IV. Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir 1990)(quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against

the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); s*ee also Martin,* 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005).

The issues before this court are (1) whether the record reveals substantial evidence supporting the ALJ's RFC finding, (2) whether the ALJ failed to satisfy his burden of proof in establishing the availability of alternative work for Plaintiff by using the Medical Vocational Guidelines without obtaining testimony from a vocational expert, and (3) whether the ALJ failed to properly consider Plaintiff's obesity in rendering his decision.

## V. Discussion

A. The ALJ's Residual Functional Capacity Assessment is Supported by Substantial Evidence.

Plaintiff initially argues that the ALJ's finding is not supported by substantial evidence, asserting that "there is no medical evidence from any physicians, whether examining, treating, or non-examining, which supports the ALJ's RFC assessment." (Pl.'s Mem. 3-4). In particular, Plaintiff alleges that the ALJ's findings were improper since he failed to obtain a RFC assessment from a medical expert. (Pl.'s Mem. 6). Because the RFC assessment is a determination "charged to a State agency medical or psychological consultant," Plaintiff asserts that "an ALJ is precluded from making this assessment without some expert medical testimony or other medical evidence to support his decision." (Pl.'s Mem. 4). These arguments are off the mark.

Plaintiff argues that the ALJ exceeded his power by making an arbitrary medical determination, thereby usurping the role of a medical doctor. (Pl.'s Mem. 7). Plaintiff contends that the ALJ should have followed 20 C.F.R. § 404.1546(a) and assigned a medical consultant to

perform the RFC assessment since "the responsibility for assessing residual functional capacity at the State agency when a State agency makes the disability determination is charged to a State agency medical or psychological consultant." (Pl.'s Mem. 4). The instant appeal, however, arises from an ALJ hearing, not a State agency determination. (Tr. 7-18). Therefore, the appropriate section of the statute is not 20 C.F.R. § 404.1546(a), but 20 C.F.R. § 404.1546(c), which directs that the ALJ be responsible for the RFC assessment for cases at the ALJ hearing level. 20 C.F.R. § 404.1546(c) (If your case is at the administrative law judge hearing level under sec 404.929 . . . the administrative law judge or the administrative appeals judges (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity.)

      Plaintiff's argument is flawed for two reasons. First, it conflates a medical RFC assessment by a medical consultant with the ALJ's duty to reach a RFC determination. Second, it confuses the clear division of roles of an ALJ with those of an agency medical consultant. Maintaining this division of responsibility is essential to preventing the very kind of abuse about which Plaintiff complains here. Of course, it is settled in this jurisdiction that an ALJ cannot act as both judge and physician. *See Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992). But the reverse corollary is true as well – just as the judge cannot assume the role of the physician, the physician cannot assume the role of the judge. For the court to require that the ALJ simply parrot the findings of a physician without critical consideration and judgment would impose "an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5p.

The RFC determination remains distinctly and emphatically a duty of the ALJ. The court has long recognized that the "determination of residual functional capacity is within the authority of the ALJ." *Beech v. Apfel*, 100 F.Supp.2d 1323, 1330 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546; *Lewis v. Callahan*, 125 F.3d at 1440. This is necessarily a duty of the ALJ, particularly because the determination of RFC requires considering not only medical evidence, but "all of the relevant evidence of a claimant's remaining ability to do work despite h[is] impairments." *Beech v. Apfel*, 100 F.Supp.2d at 1330. Furthermore, determinations of a number of issues are "reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(e). The RFC is one such issue in which "the final responsibility for deciding . . . is reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(2).

Plaintiff cites *Rivera-Figueroa v. Secretary of Health & Human Services*, 858 F.2d 48, 52 (1st Cir. 1988), to support the assertion that "[t]he First Circuit has specifically held that 'absent a residual functional capacity assessment from an examining physician, [the First Circuit] do[es] not think that [an] ALJ is equipped to conclude that [a] claimant's condition [presents] no significant limitations on ability to work." (Pl.'s Mem. 4). However, this quote, in its redacted version, does not accurately represent the holding of that case. What the First Circuit actually said was that "absent a residual functional capacity assessment from an examining psychiatrist, we do not think that the ALJ is equipped to conclude that claimant's condition was so trivial as to impose no significant limitations on ability to work." *Rivera-Figueroa*, 858 F.2d at 52. Replacing the term "psychiatrist" with "physician," "the" with "an," "claimant" with "a claimant," and "was so trivial as to impose" with "presents" goes beyond merely editing to maintain grammatical consistency; it changes the meaning of the quote to

suggest that the First Circuit was issuing a broad statement of the law rather than a narrow determination for a particular case.[2] The court in *Rivera-Figueroa* found the ALJ's reliance on the grid in that particular case to be inappropriate for that particular claimant given her history of treatment for a significant mental disorder. *Id*.

To the extent that Plaintiff contends that "there is no medical evidence from any physicians, whether examining, treating, or non-examining, which supports the ALJ's RFC assessment" (Pl's Mem. 3-4), as explained below, that argument is not supported by the Record. It also misinterprets the court's narrow role in reviewing the ALJ's decision. The court's review of the ALJ's decision is not a substantive *de novo* "right or wrong" evaluation. The court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, the task before this court is to assess whether the ALJ's decision is based upon substantial evidence.

As to whether substantial evidence exists to support the ALJ's findings, Plaintiff argues that "there is no evidence of record[ ] [that] supports the ALJ's residual functional capacity assessment." (Pl's Mem. 4). A survey of the Record shows that Plaintiff's assertion simply does not hold water. There are 996 pages of medical evidence in the Record. (Tr. 177-1172). In the absence of a statement by a treating physician concerning Plaintiff's limitations, the ALJ took into consideration the available medical statements from Plaintiff's treating physicians, and reviewed records from Plaintiff's primary physicians, Dr. Oliver P. Matthews, Dr. William A. Hobbs, Dr. Vance C. Plumb, and Dr. Stephen Wampler. (Tr. 14-16). Medical records cited by

---

[2] While Plaintiff is certainly free to explore the rationale behind the First Circuit's decision and explain how the particular facts and application of law in *Rivera-Figueroa* should influence the decision in the instant case, that is not what Plaintiff has attempted to do here. (Pl's Mem. 4).

the ALJ include indications of normal heart rhythm (Tr. 178), normal pacemaker function (Tr. 954-58), no change in medications (Tr. 958, 1096), angina resolved from administration of nitrates (Tr. 1113), and continuing excellent results from prior angioplasty with mild in-stent stenosis of the mid- lower anterior descending coronary artery stent. (Tr. 201). Given the substantial amount of medical evidence considered by the ALJ (and that evidence is consistent with his decision), the court cannot conclude that the ALJ's findings are not supported by substantial evidence on records as a whole.

Plaintiff claims that "[r]ather than obtaining a medical source statement from a treating physician, the ALJ made medical judgments based on his own review of the medical records." (Pl.'s Mem. 6). It is this assertion – that there was no RFC assessment conducted by a medical expert – which underlies the crux of Plaintiff's argument that the ALJ's decision was improper and therefore not supported by substantial evidence. (Tr. 4-6). But this assertion is off target. The record includes a "Physical Residual Functional Capacity Assessment" conducted by H. Gordon Mitchell, a medical consultant. (Tr. 1069-76). The ALJ specifically cited this assessment and considered the state agency medical consultant's findings that "the claimant could be expected to perform light work-related activities" before reaching the more generous conclusion that Plaintiff retained the RFC to perform sedentary work. (Tr. 15). Indeed, the ALJ stated that he gave "great weight to the opinion of the state agency medical consultant which was rendered on September 12, 2006." (Tr. 17). Plaintiff is no doubt fully aware of the existence of this RFC assessment – he cited "Dr. H. Gordon Mitchell, the State agency medical consultant" in his brief. (Pl.'s Mem. 7). Moreover, there was a second RFC assessment performed on June 19, 2007 by disability examiner Andrea Files. (Tr. 1098-1105). The ALJ likewise referenced that

assessment and indicated that he took it into consideration when rendering his judgment. (Tr. 16). Therefore, the assertion that the ALJ conducted the RFC assessment without obtaining a RFC assessment from a medical expert is simply frivolous and Plaintiff's first claim is without merit.

> B. The ALJ Properly Used the Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix II to Determine the Existence of Jobs in the National Economy Which Plaintiff Was Capable of Performing.

Plaintiff next contends that the ALJ erred in his findings regarding the availability of jobs in the national economy suitable for Plaintiff's activity level because the ALJ did not obtain testimony from a vocational expert. (Pl's Br. 6-7).

Of course, the threshold question for the court's consideration is whether the ALJ was required in this case to consult a vocational expert. "In a disability determination, once a claimant proves that []he can no longer perform h[is] past relevant work, the burden shifts to the Commissioner 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999)(quoting *Hale v. Bowen,* 831 F.2d 1007, 1011 (11th Cir. 1987)). There are two separate ways by which an ALJ may determine whether the claimant has the ability to adjust to other work in the national economy: (1) by applying the Medical Vocational Guidelines, and (2) by obtaining the testimony of a vocational expert. *See Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). The Medical Vocational Guidelines, 20 C.F.R. § 404, Subpart P Appendix 2 ("the grids"), "provide applicants with an alternate path to qualify for disability benefits when their impairments do not meet the requirements of the listed qualifying impairments." *Phillips*, 357 F.3d at 1239. These guidelines "include detailed grids and rules which, based on a

claimant's residual functional capacity, age, education, and previous work experience, direct a finding of disabled or not disabled." *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987). Alternatively, the ALJ may determine a claimant's ability to adjust to other work in the national economy through the use of a vocational expert. *Phillips*, 357 F.3d at 1239. The ALJ may rely solely on the grids to determine whether other jobs exist in the national economy except when either one of two situations arise that require the use of a vocational expert: (1) when the claimant is unable to perform a full range of work at a given RFC level; or (2) when the claimant has non-exertional impairments that significantly limit basic work skills. *Phillips*, 357 F.3d at 1242 (citing *Francis v. Heckler*, 729 F.2d 1562, 1566 (11th Cir. 1985)).

Plaintiff first argues that "VE testimony was required in this case to meet the Commissioner's burden of proof due to Mr. Fadell's inability to perform the full range of sedentary work." (Pl.'s Mem. 7). However, the ALJ had already determined that Plaintiff "has the residual functional capacity to perform the full range of sedentary work." (Tr. 13). Given that determination, the court's task is to review whether the ALJ's determination is supported by substantial evidence. In making his determination, the ALJ obtained the testimony of two vocational experts: Dennis Putman and Andrea Files. (Tr. 129-31, 163-65). The ALJ's decision appears to be consistent with, if not more generous than, the determinations of the vocational experts. (Tr. 13, 129-31, 163-65). Plaintiff has pointed to no basis for reversing the determination of the ALJ with regards to Plaintiff's capacity to perform the full range of sedentary work.

Plaintiff next argues that "VE testimony was required in this case to meet the Commissioner's burden of proof due to . . . the presence of significant nonexertional

limitations." Plaintiff contends that the ALJ failed to consider his pain and medication as non-exertional limitations. (Pl.'s Mem. 8). But that assertion assumes too much.

Before the burden ever shifts to the ALJ to prove the existence of jobs in the national economy suitable to the claimant given his RFC, the claimant must first meet his burden to prove the existence of a disability. *See Jones*, 190 F.3d at 1229-30; *Wolfe v. Chater*, 86 F.3d at 1077. The court has long recognized that "the ultimate burden of proving disability is on the claimant." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982). Therefore, before considering whether the ALJ met his burden of proof, the court must first ascertain whether the burden of proof ever shifted to the ALJ in the first place based on whether Plaintiff had sustained his burden of proof.

With regard to pain, Plaintiff briefly mentions that "VE testimony was needed in light of Mr. Fadell's significant pain, which is also a nonexertional limitation." (Pl.'s Mem. 8). A review of the record, however, shows that Plaintiff did not allege that he suffered from significant pain at the ALJ hearing. At the ALJ hearing, pain was mentioned only once – when the ALJ asked Plaintiff if "angina" meant "heart pain . . . or chest pain." (Tr. 36). Plaintiff, however, did not allege at the hearing that he suffered from significant pain that amounted to a nonexertional limitation. (Tr. 30-48). Since Plaintiff did not allege that pain imposed a nonexertional limitation at the ALJ hearing level, it would be inappropriate for the court to consider the matter in the first instance on this appeal. *See Wheeler v. Heckler*, 784 F.2d 1073, 1077 (11th Cir.1986); *Pierre v. United States*, 525 F.2d 933, 936 (5th Cir.1976). To do so would encroach upon the role assigned to the ALJ as the trier of fact, and (again) it is well-established that the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for

that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d at 1210. Such deference is even more appropriate when there are no facts (or fact-finding) to review.

Plaintiff argues that "the ALJ erred in failing to even consider the side effects of Mr. Fadell's medications, despite evidence in the record of that [sic] his medications result in side effects of inability to concentrate, short term memory loss and fatigue." (Pl.'s Mem. 8). But in point of fact, the ALJ did consider the side effects of Plaintiff's medication in his final determination. (Tr. 14). On page eighteen of the transcript (page forty-five in the record), which Plaintiff cites as evidence when asserting that the ALJ failed to consider the side effects of Plaintiff's medications, the ALJ specifically asked Plaintiff which medication he thinks causes the memory loss and whether Plaintiff had experienced any changes to his medicinal regimen in the last year. (Tr. 45). Moreover, as the claimant bears the burden of presenting evidence to prove disability, an ALJ does not commit error by failing to consider the side effects of medication if the claimant does not provide evidence of any such side effects.[3] *See Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992). As Plaintiff has failed to cite any medical support for his claim that he is significantly impaired by side effects from his medication and appears to contradict his own testimony, the court cannot conclude that Plaintiff has met his burden to prove disability. Therefore, Plaintiff's second claim is rejected.

---

[3] Plaintiff, when citing to the "evidence in the record" cites only to his own testimony in the transcript of the hearing, not to any medical determination. (Pl.'s Mem. 8)(citing Tr. 38, 45). In an undated disability report filed by Plaintiff, he reported "none" under side effects for each of the medications he was taking. (Tr. 104). In a separate undated disability report filed by Plaintiff, no side effects are listed for Plaintiff's medications. (Tr. 144). Likewise, in the disability report for the appeals council filed on July 13, 2007, Plaintiff again listed no side effects for his medication. (Tr. 169).

C.   The ALJ Properly Considered Plaintiff's Obesity

Finally, Plaintiff argues that "[t]he ALJ erred by not considering the effect of the claimant's obesity on his RFC." (Pl.'s Mem. 10). Plaintiff has not clearly articulated, however, how it is that the ALJ failed to properly consider Plaintiff's obesity. Plaintiff mentions *Thomason v. Barnhart*[4], *Early v. Astrue*[5], and *Williams v. Barnhart*[6]; but makes no effort to explain how those cases are relevant here. (*See* Pl.'s Mem. 9-10). The passage that most resembles an allegation of a specific error by the ALJ is Plaintiff's assertion that "the ALJ's decision failed to discuss, or even mention, Mr. Fadell's morbid obesity in the Notice of Decision." (Pl.'s Mem. 9). That contention is unsupported by the Record. And, in any event, even if it did find some Record support, it would not necessarily indicate error by the ALJ.

First, even if the ALJ failed to explicitly mention obesity in his decision, it is recognized in this jurisdiction that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered h[is] medical condition as a whole.'" *Dyer*, 395 F.3d at 1211; s*ee also, Hennes v. Comm'r of Soc. Sec. Admin.*, 130 Fed. Appx 343, 348 n.11 (11th Cir. 2005)(Although the ALJ did not specifically address how [the plaintiff's] obesity affected her subjective complaints of pain and, ultimately, her RFC, . . .).

---

[4] 344 F. Supp.2d 1326, 1330 (N.D. Ala. 2004).

[5] 481 F. Supp.2d 1233, 1239 (N.D. Ala. 2007).

[6] 186 F. Supp.2d 1192, 1198 (M.D. Ala. 2002).

Furthermore, Plaintiff has not explained how the ALJ failed to consider obesity, but has instead raised generalized claims that "[t]he ALJ erred by not considering the effect of the claimant's obesity on his RFC," "by dismissing the effect of the claimant's obesity on aggravating his musculoskeletal problems and producing pain that is much greater than what would be expected if obesity were not present," and by ". . . fail[ing] to factor the effect of Mr. Fadell's obesity . . . on increasing the effect of his sleep apnea on his problems with fatigue and drowsiness." (Pl.'s Mem. 10). But none of these arguments were actually raised before the ALJ at the hearing (*See* Tr. 28-48); therefore, it would be inappropriate to address them here. *See Wheeler*, 784 F.2d at 1077; *Pierre v. United States*, 525 F.2d 933, 936 (5th Cir. 1976).

Alternatively, even if the court were to consider these arguments, they are too general in nature to help Plaintiff here. Indeed, the Third Circuit has held in *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3rd Cir. 2005), that a "generalized claim that obesity exacerbates impairments is insufficient without medical evidence specifying how or in what way it does so." The court finds that reasoning persuasive.

But there is more. Here, the ALJ explicitly considered obesity in his final decision. He found Plaintiff to have "morbid obesity" and concluded that such an impairment has a "more than minimal effect upon the claimant's ability to engage in work-related activities." (Tr. 12-13). Thus, the ALJ commented on Plaintiff's weight and its consequences in his decision. (Tr. 14, 16). In addition, in his determination of RFC, the ALJ demonstrated that he was clearly aware of Plaintiff's obesity and took into consideration the testimony of a medical expert, "giv[ing] great weight to the opinion of the state agency medical consultant which was rendered

on September 12, 2006." (Tr. 17). Therefore, the court cannot conclude that the ALJ failed to properly take obesity into account when reaching his RFC determination.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this        12th        day of July, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE